case number 20 24 60 24 the United States of America versus Gary Warick oral argument not to exceed 15 minutes per side Miss Cleary you may proceed for the appellant good morning good morning your honors may it please the court my name is Katherine Cleary and I am representing mr. Gary Warick we have requested three minutes for rebuttal the government would like to make this case about two videos of mr. Warick selling meth on April 26th in May 3rd but this case is really about everything that happened in the days before those videos from the beginning mr. Warick's defense was entrapment he alleged that hunter a confidential informant had engaged in a days-long campaign of harassment to induce him to sell the drugs but the government lost hunter before mr. Warick's trial and failed to turn over vital text messages that would have corroborated mr. Warick's testimony regarding entrapment the district court also failed to issue necessary entrapment instructions I'm like can you help me with the timeline I'm struggling a little bit with that that I'm my understanding is that work originally moved the district court to exclude hunters testimony from trial right when did he first assert the entrapment defense to the district court yeah mr. Warick's what the reason why he moved the district court to exclude hunters testimony is he believed that you know hunter was this uncredible person but he intended to raise his entrapment defense from the beginning um the hunters absence is particularly relevant to mr. Warick's Brady claim and if it's okay with your honors I'd like to first address that and also address the district court's error to issue the entrapment instruction so starting with me I'm just trying to understand when he first asserted his entrapment defense to the district court can you give me a range or a motion or when that began yeah I believe the district court was always aware that mr. Warick intended to raise an entrapment defense from the very beginning of this case mr. Warick had said that he did not sell these drugs purposefully and that hunter had come into his home and it was the one who induced him to sell them the government had made clear to the prosecution that you know mr. Warick was intending to call hunter and was expecting that hunter was going to be there and that's why the district court you know gave the order to the prosecution to try to produce hunter for trial and that's kind of you know when things started to break down in those weeks leading up to trial when it became clear that hunter was not going to be available and mr. Warick was not going to be able to cross-examine him and that's really what makes these text messages that were suppressed so important as the court right this court recognized in Thomas versus Westbrook's materiality for Brady purposes is assessed in light of all of the evidence and it's assessed in the context of the evidence that was produced in the context here is the government relying heavily on an informant who they didn't bring to trial who was not available for cross-examination and mr. Warick was unable to make out his entrapment defense by talking to hunter mr. Warick's entrapment defense and evidence on the entrapment is that whether there was a predisposition and I'm just not sure why all these arguments have anything to do with that your client is the one who either has a predisposition or not he had a prior drug arrest that didn't help that's what you have to focus I mean that's that's the that's the challenge in this case and I guess I'm not sure I understand why these arguments go to that problem the predisposition yes yeah yeah so we believe mr. Warick did present enough evidence to show lack of prior convictions there was a prior conviction the Supreme Court recognized in the United States versus Sherman that a five-year-old nine-year-old drug conviction is not sufficient evidence to show predisposition here mr. Warren filmed we have the film what about the film looks looks like he I don't understand why you say his he's being coerced into selling drugs that yeah I think that the point that we're trying to make is that these videos start on April 26 and the second videos on May 3rd by virtue of the fact that mr. Warwick is raising an entrapment defense that evidence is going to come prior to April 26 in the days leading up to those drug videos I understand that the government's saying he doesn't look heavy hesitant on those videos but that's only one piece of the story once he's been once all the pressure has been brought to bear he's now succumbed and so he doesn't correct so there's a lot that's happening syndrome thank you he's been I don't know I mean in the second video mr. Warwick did appear much more hesitant and the government recognized that at trial but I'd say you know these text messages because they begin on April 23rd and they're showing and corroborating mr. Warwick's testimony that hunter had been in his home had been staying with him for many days leading up to that drug transaction they are corroborating his story and as a you know pro se criminal defendant who is making out the evidence of hunters inducement largely through his own testimony it was bound to be seen by self-serving and self-interested by the jury and the main point here with you know whether mr. Warwick is entrapped or not entrapped is do you believe what he's saying do you believe his testimony and it's a lot easier to believe his testimony when you have these series of text messages that are corroborating portions of it so so that might be true but with the messages have been admissible anyway I mean they can't be admissible to impeach hunter he's the testify are they what are they admissible the other party to the text messages was detective Martin who did testify at trial and detective Martin's messages are you know probative as well and the timelines of everything that's going on the messages are it are you know admissible to impeach his testimony particularly because of the timeline of things that are happening he had testified I mean what would you impeach him about like he admitted yeah we use this confidential informant we send them in there to buy drugs it's the timeline that would have been impeachable detective Martin as well as all of the government witnesses did not admit that hunter had had an interaction with mr. Warwick or staying at mr. Warwick's house prior to the 26th they all say they don't know when it happened they all say that they they remember that hunter may have stayed with mr. Warwick but they don't remember if it was before the first drug transaction or not and you know the detective Martin actually testified at one point the first time I talked to him there I think it was April 26 of 2022 he was telling me about an incident that happened on April 25th of 2022 and that he's referring to his contact with hunter with respect to mr. Warwick and so these messages show that detective Martin and hunter are talking about their plans for mr. Warwick as of the 23rd and that hunter is staying with mr. Warwick as of the 23rd which is corroborating what mr. Warwick was saying and so the messages at the very least would have been impeachable for that purpose there's also one specific message that I'd like to point the court's attention to where hunter says I will Gary's weird out today too but if I can make it happen I will I promise and you know this is important for mr. Warwick's entrapment defense because the government tried to make this look like it's a quick and easy drug deal they show this video on April 26 when he doesn't look very hesitant and like that's the whole story that's what the government's trying to make the whole story so any evidence from the days leading up to that video that makes it seem like actually mr. Warwick was hesitant hunters not sure if he's gonna be able to make this drug deal happen that's incredibly helpful and does corroborate his story and makes all of his testimony relating to his entrapment defense more believable what about the fact that the jury heard all I mean they heard from both detective Richardson and detective Martin it's just the time frame because both of those officers admitted like yeah we we used a CI so so the in order to show prejudice you have to show a reasonable probability that this would have affected the outcome and you think you get that just because we would have backed up the timeline a few days it's the timeline and also the text messages that reflect hesitancy and there's another text message where hunter admits that he's staying with mr. Warwick and so that corroborates mr. Warwick story that you know hunter had preyed on his sympathies to get into the home you know Kyle's versus Whitley the Supreme Court recognized that suppression of evidence is prejudicial when the undisclosed evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict and I think because these messages do provide corroboration of mr. Warwick's testimony and this timeline they do put the videos in a different light it becomes a video where you have a quick and easy drug deal with someone who's not hesitant at all to questioning that to video it becomes a video where there's a lead-up to it there's a day's lead-up when of time when an entrapment could have occurred I'd like to move on to the issue of the entrapment instructions if your honors have no more further questions on the Brady issue I'd like to discuss first that whether mr. Warwick was entrapped as to the May 3rd drug transaction was a factual question that the jury should have been able to just consider the district court declined to give the entrapment instruction because mr. Warwick said he was wise to what hunter was doing by this point but in doing so the court improperly foreclosed as a matter of law a factual determination that the jury was entitled to make as this court recognized in the United States versus Mitchell the question of whether an initial entrapment extends through a series of crimes is not a question of law but rather is a question of fact for the jury and so what even though mr. Warwick said that he might be he was wise to what hunter was going on it still would have been permissible for a reasonable juror to conclude that that behavior and all of mr. Warwick's behavior as to the May 3rd drug transaction was the product of hunters initial inducement in the days leading up to all of that how do you answer the what I see is the biggest problem there which is the jury heard the entrapment defense on count I think it's count to which is arguably his strongest claim to an entrapment defense and they didn't buy it so how are you going to show harm I mean even if it was error how can it be harmful when the jury rejected it on the count to yeah failure to give the entrapment instruction as to the other counts tainted the one that was given even though the entrapment instruction was given as to count to it would have been confusing to a juror why it was given for count to but not the other cast when these are all part of the same series of events it's all in a couple days apart two drug transactions between the same two people that look very similar and you know the jurors understand that the judge gives them the instructions and by giving the entrapment defense for only one that communicates that the defense is narrow or not particularly judge Larson that that was his better claim though it's possible that it could have been seen as his better claim but there's also evidence that the May 3rd drug transaction would have been more more you know reasonable for the jury to conclude that he was entrapped he looked a lot more hesitant on that May 3rd video so if we're going just based off what the jury saw they might find well you know at that point hunter had been in his house for longer he looks more hesitant so that's one thing mr. work had also testified to additional evidence between April 26 and May 3rd that could have allowed the jury to conclude that he was entrapped as to the May 3rd drug transaction he said that you know hunter had he had kicked hunter out of his house and he was crying and said that he didn't want to leave and that hunter showed up back at his house and just kept hounding him over and over again so there was additional evidence in there that the jury would have been able to consider to potentially find he wasn't trapped as to the other counts and you know I would also just mention that let's say they find him guilty of count two but not guilty yes to the other three counts one three and four were the counts that carried the mandatory minimum and mr. work was sentenced to that mandatory minimum and so his sentence could have potentially been dramatically different as well I'd also like to talk about count for briefly which was the possession with intent to distribute charge which was inherently bound up with the count to charge sorry I see a lot of time so I'll reserve the remainder of my time for a bottle thank you good morning good morning your honors it may have pleased the court William claimant for the United States mr. work obviously raises a number of claims here I'd like to start with his entrapment jury instruction issue and then move on to the Brady issue before doing that though I did want to address judge Strange's question at the outset about sort of the timeline of events here so mr. work was indicted in October of 2022 he had numerous disputes with his counsel I think he had tutor at the end three appointed counsels those disputes sort of tied the case up for about a year and Mr. works defense began in earnest in October of 2023 that's when his final counsel who ended up being his standby counsel began filing motions to suppress they moved to suppress the entirety of hunter the confidential informants testimony they didn't want him testifying at trial there was an evidentiary hearing on that motion to suppress in November of 2023 at which point mr. work then fired his third attorney and then that point was proceeding pro se and I think in December and at the time of that hearing and then at another hearing in December 6 of 2023 is when the district court really started to understand mr. works defense that it was going to be centered around actually calling hunter and presenting some sort of entrapment defense with respect to the jury instructions issue the district court did not err in instructing the jury as to an entrapment instruction defense only on to count two and not counts one three and four I think it might help to take a step back and think about the counts before really getting into the weeds of the jury instruction issue as I see it the counts are sort of divided into three buckets there's the first drug by which is actually count two that's the April 26 drug by that's caught on camera where mr. hunter enters works home they're there for about a minute or two they exchange money he gets meth and then he leaves so that's count two the second bucket of counts is really count one the conspiracy count and count three the May 3rd drug by a video that's I think it's a little longer it's around 25 minutes where mr. hunter meets with mr. work outside of works home gives work some money work then drives off comes back with his co-conspirator this man named Lee sets her Lee sets her than hands mr. hunter a manila envelope with two ounces of meth and then there's the third bucket which is the possession count the May 4th possession of two ounces of meth at his home and so when assessing those counts the district court considered mr. mr. works testimony sort of in two different categories with respect to count two in terms of the inducement defense but the court looked at was mr. works testimony that he was repeatedly and persistently badgered to sell meth leading up to the April 26 date I think the court expressed some skepticism over whether that was true or not but decided ultimately to let that go to the jury with respect to the other counts council 1 3 & 4 mr. works testimony was meaningfully and materially different he testified that he did not or rather he testified that he had deduced by May 3rd that mr. hunter was working with the police and that he wanted to take his money as some sort of retribution for that betrayal he also testified that he didn't actually know what mr. hunter wanted to buy on that date that he didn't actually see the drug deal go down that he has no idea what sets her gave to hunter on May 3rd but that he doesn't think it was methamphetamine and I think you know that sort of testimony is obviously incompatible with an entrapment defense you can't be induced to commit a crime if you don't even know that the crime is occurring so I think the court was well within its rights to only instruct on entrapment is to count to you and not onto the remaining counts unless the court has any questions about the jury instructions I'll move quickly to the Brady issue and I think there's two points the government wants to make here your honors whatever happened to hunter I don't I don't know I haven't heard any updates my understanding is that there were some warrants for his arrest and he just absconded and has not been located with respect to the Brady issue though they're there I think two quick points I wanted to make first is that the district court didn't err and finding as a factual matter I suppose that these texts were purely logistical in nature that they were just discussing meeting times where hunter was where work was there was any substance let me ask you about one of the text message in reference to hunter buying drugs from war where hunter texted Martin and said if I can make it happen I will I promise why is that not exculpatory under Brady I think that goes to an issue that this court discussed in the case of United States versus Fox that's a fairly recent decision from 2025 I believe involving the attempted kidnapping of governor Whitmer and there what the court said is that in order to be relevant and material to an entrapment defense an informant statement actually has to be communicated to the defendant this sort of motive to induce isn't actually relevant to the entrapment defense what's relevant is whether the informant actually engaged in some sort of conduct that overcame the defendant's state of mind to actually alter his state of mind and induce him to sell drugs I understand the courts like thinking here I certainly take your honor's point I think to the extent there is some you know exculpatory value to that statement I don't think there's any prejudice here because I think all of this information was communicated to work well in advance of trial in order for him to use it as I see it work has extracted sort of two tidbits of information from the text that he asserts were really relevant to his entrapment defense one which my friend on the other side pointed out is the fact that hunter was in his home at some point prior to April 26 the first drug by the other is this idea that hunter texted Martin that work was being weird which they are now arguing support some sort of theory that he was resisting the drug deals or didn't want to do the drug deals you know to the extent that information is relevant that was communicated on multiple occasions to mr. work well in advance of trial with respect to the fact that hunter was in his home prior to April 26 what do you mean it was communicated to him well in advance of trial you're not saying that he had these messages no no your honor he the messages were disclosed post trial but the the content the information that the actual Brady material in these messages was communicated to the defense and so for example with respect to the fact that hunter had been in his home prior to April 26 detective Martin actually testified at the suppression hearing that yes hunter had as far as he understood it spent the night in works home at some point prior to April 26 he also testified at the trial that again yes as far as he understood it hunter had been in and around works home prior to April 26 so this issue came up at trial but what about if I can make it happen I will I promise I don't know if that message exactly was communicated I don't see it as being going back to my discussion with judge Strange I don't see that as really evidence of inducement that's evidence of motive that that evidence of intent to induce I don't I don't necessarily agree with that I don't think he's saying I'm going to coerce him but I take your honor's point that that could arguably support some sort of motive here that he's desperate to get this to happen I still think that you know that wasn't communicated to work in any way and there's no evidence of what work actually did to alter his state of mind you know vis-a-vis that text message the one final point I wanted to make was about the text message about hunter being hunter perceiving work as being weird that was certainly communicated to the defense on multiple occasions I think but first and foremost if this court reviews the video of the second drug by hunters on camera they're recorded saying I think you're being weird today I don't think you trust me so you know to the extent there's some suggestion that that was relevant to the entrapment defense here that was you know thoroughly relayed to mr. work well in advance of trial I know we didn't get to any of the other issues if the court has any questions I'd be happy to address forfeiture suppression if not we would rest on our papers and ask that you affirm the judgment below thank you very much oh oh go ahead yes what is your response towards argument that hunters absence violated his right to complete defense I guess my bottom line question is why didn't the keep why didn't the government's subpoena hunter earlier so I'd be happy to address that your honor and I think you know that obviously focus that that is a big focus of mr. works brief we we do take issue with his characterization of what happened below I think the best recounting of what happened is from the district court judge who obviously oversaw the entire case and what he said is that the government did not orchestrate or have any responsibility for hunters absence instead what happened is that in December 6 2022 or other 2023 whatever two months before trial the district court realized that the government wasn't going to be calling hunter as a witness and realized that mr. work was proceeding pro se so the district court told the government do your best to track hunter down and subpoena him the government took numerous steps to try to find hunter but as the district court also explained in its order denying a motion for a new trial hunter just disappeared which is really not all that surprising in a case like this one where hunter the informant is relatively itinerant and the case is dragging on for many months due to issues with mr. works appointed counsel at that point the government notified the court that mr. hunter had gone missing they couldn't find him the court instructed the government to then tell mr. warwick with the which the did on January 26 at the pretrial conference at that pretrial conference mr. work revealed actually I think for the first time to the government that he had also hired his own private investigator that they had addresses for mr. hunter where they believed he might be that as far as I knew they likewise determined that he was he was missing the court then issued its own subpoena for hunter tasked I believe the marshals but serving that subpoena and offered to continue the trial and mr. work denied that offer and insisted on going to thank you thank you thank you I have two quick points to wrap up with one about Brady and one about entrapment and first I'm going to the text that judge branch brought up I want to point the court's attentions to the exact language of that text and this is page ID at 2973 the text reads I will Gary is weird out today too but I can if I can make it happen I will I promise and this text was from April 24th which is already earlier than any government witness indicated to that trial that hunter and war it seems to capture enthusiasm not a capacity to coerce it so it the government I don't think it's necessarily an enthusiasm and your honor and I would like to especially point out the word to in the text that's indicating he has tried already he's weird out he's weird out today again and this and a drug transactions doesn't that happen occasionally it's it's but it speaks to it's it's not about it it speaks to the hesitancy and the timing of everything that happened in the days before the first transaction you know that the government brings up oh it's it's about motive it's it's not about here it's about hesitancy and timing and the timing of the text you know being before the government even admitted that mr. work was there and you know this is where hunters absence really comes in and this is why it's all so prejudicial and the you know the real question here under Kyle's v. Whitley is whether the jury could have seen this Kate in a different light have they seen these text messages at trial the different light that we have here is that mr. works come you know mr. works uncorroborated testimony about what happened in these three days air in these few days before the government and even admits contact with him would have been corroborated it puts the case in a completely different light he otherwise was asking the jury to simply take his word for it that this was even going on this was a situation where corroboration was just what he needed and the government's failure to produce these texts at trial greatly undermines our confidence in the verdict because of that and I also wanted to make a quick point about the entrapment instruction so Mitchell says that whether an additional and an initial inducement extends throughout a series of events is a question of fact for the jury the district court found for count two as we've discussed that mr. work presented enough evidence to to make it a question of fact you know on entrapment and to justify giving the entrapment instruction by doing that Mitchell says that the jury has the to decide as a question of fact whether that entrapment continued and yeah and the the judge foreclosed the jury's ability to answer that that question of fact and I I see my time has expired if there are further questions we ask this court vacate mr. works conviction and remand the case thank you very much we appreciate the briefs and arguments by both sets of parties thank you very much and a miss Cleary miss Poe I see you are both law students so very good job very impressive and keep working at it thank you for being here and thank you miss Alanis for and overseeing this program the case will be submitted